UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRUCE TRACIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-13248-JGD |
| LIBERTY LIFE ASSURANCE CO. | ) | |
| of BOSTON and COMCAST CORP. | ) | |
| LONG TERM DISABILITY PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S
MOTION TO TAKE LIMITED FOCUSED DISCOVERY**

November 19, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Bruce Tracia, was a business account executive at Comcast Corporation ("Comcast"). He stopped working on May 10, 2011 as a result of ankle related pain, for which he ultimately underwent surgery. Tracia subsequently was diagnosed with complex regional pain syndrome as well as various other medical conditions. He has brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA") seeking to recover long term disability ("LTD") benefits under the terms of an LTD benefits policy issued by the defendant Liberty Life Assurance Co. ("Liberty"). After initially approving Tracia for LTD benefits, and after Tracia qualified for social security benefits, Liberty determined that Tracia no longer qualified for LTD

benefits, and terminated those benefits by letter dated November 9, 2012. Plaintiff challenges that denial as being arbitrary and capricious, and he argues that the decision was influenced by a conflict of interest since Liberty is both the ERISA plan's administrator and the payer of benefits.

The matter is before the court on the Plaintiff's Motion to Take Limited Discovery (Docket No. 22). By his motion, Tracia is seeking discovery concerning the number and outcome of medical reviews undertaken by James Lee Lewis, M.D., Harold E. Gottlieb, M.D. and Ephraim K. Brenman, D.O., all of whom had participated in the review of his file which resulted in the denial of his request for LTD benefits. He is also seeking information and documents about the relationship between Liberty and MCMC LLC, the entity which procured the services of the doctors for Liberty.[1]

For the reasons detailed herein, the Motion is DENIED.

## II. **BACKGROUND**

A detailed review of the plaintiff's medical history is not necessary or appropriate at this stage, since the sole issue before this court is whether the administrative record ("AR") should be supplemented with additional discovery. The merits of Tracia's entitlement to LTD benefits are not presently before this court.

Liberty issued a Group Disability Income Policy to Comcast that provided for LTD benefits. (AR 1). Under the relevant definition of "disability," a plan participant

---

[1] While MCMC located Drs. Lewis and Gottlieb, Dr. Brenman's services were procured by MES Solutions.

qualifies for LTD benefits for 12 months if he is unable to perform the material and substantial duties of his "own occupation." (AR 9). Thereafter, a plan participant qualifies for LTD benefits if he is unable to perform the material and substantial duties of "any occupation." (Id.). Liberty, as the plan administrator, was granted "the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility[.]" (AR 42). The plan provides further that Liberty's "decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." (Id.).

As noted above, Tracia stopped working on May 10, 2011. He underwent surgery for tarsal tunnel syndrome on June 3, 2011. After receiving the full-term of short-term disability benefits under the plan, by letter dated November 29, 2011, Liberty notified the plaintiff that he qualified for long-term disability benefits, effective November 15, 2011. (AR 2362-63). In connection with its decision, Liberty obtained a peer review analysis by Steven M. Lobel, M.D. and information from plaintiff's physician, Dr. Rathmall. Dr. Lobel had been referred to Liberty by MCMC, LLC. (AR 2375-76).

After approving Tracia for long-term benefits, Liberty continued to review plaintiff's claim. Based on his policy, Liberty also required him to apply for benefits with the Social Security Administration ("SSA"). (AR 2363). Tracia did apply for such benefits, which were awarded. In connection with its own continued review, Liberty sent plaintiff's claim for an "independent review" by Gregg G. Marella M.D., who was Board Certified in Internal Medicine (AR 1716-20), and Ephraim K. Brenman, D.O., who was

Board Certified in Physical Medicine and Rehabilitation. (AR 1734-43). These physicians were referred by a third party vendor, MES Solutions. (Id.). Dr. Brenman opined that while plaintiff had physical restrictions in, *inter alia,* walking, climbing, and standing, he had a sustained full-time sedentary capacity. (AR 1742). In connection with his report, Dr. Brenman certified, among other things, that he "does not accept compensation for any review activities that is dependent in any way on the specific outcome of the case." (Id.). Liberty also obtained a review by a Vocational Specialist who opined that the plaintiff could engage in various occupations. (AR 1725-28). After obtaining this information, Liberty discontinued plaintiff's LTD benefits effective November 15, 2012. (AR 1716).

Plaintiff appealed the decision to discontinue benefits. As part of the appeal, Liberty referred the claim file for independent medical peer review to Harold E. Gottlieb, M.D., who was Board Certified in Internal Medicine (AR 95-113), and Jamie L. Lewis, M.D., who was Board Certified in Physical Medicine & Rehabilitation/Pain Medicine and Physical Medicine & Rehabilitation. (AR 146-65). These independent reviewing physicians were referred by MCMC. (AR 231-36). Dr. Lewis opined, based on his record review, that after November 14, 2012, plaintiff would have sustained capacity for full time work, with some restrictions regarding lifting, walking and standing, but no restrictions regarding use of his upper extremities, or sitting. (AR 163-64). Dr. Lewis certified that compensation for his review was "not dependent, in any way, on the outcome of this case." (AR 164-65). Dr. Gottlieb conducted a record review, and also

spoke with plaintiff's attending physician, Dr. Chin. (AR 95-112). Dr. Gottlieb opined that the plaintiff had the "sustained capacity for full time work without restrictions or limitations." (AR 109). He also certified that his compensation was "not dependent, in any way, on the outcome of this case." (AR 109-110). Another vocational analysis confirmed that the plaintiff was still able to perform the previously identified occupations. (AR 50). By letter dated August 12, 2013, Liberty upheld its original decision to discontinue benefits beyond November 14, 2012. (AR 88-94). This appeal followed.

Additional facts will be provided below where appropriate.

## III.  ANALYSIS

Where, as here, the ERISA "plan documents delegate discretionary authority to the plan administrator (whether or not structurally conflicted), courts should review benefit-denial decisions for abuse of discretion, considering any conflict as one of a myriad of relevant factors." Denmark v. Liberty Life Assur. Co. of Boston ("Denmark III"), 566 F.3d 1, 9 (1st Cir. 2009). Under this standard, "benefit-denial cases typically are adjudicated on the record compiled before the plan administrator." Id. at 10. "The long-standing rule in the First Circuit holds that 'some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator.'" McGahey v. Harvard Univ. Flexible Benefits Plan, Civil Action No. 08-10435-RGS, 2009 WL 799464, at *2 (D. Mass. Mar. 25, 2009) (quoting Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003)). "In some cases, a

good reason has been found to exist when a party makes a colorable claim of bias." Denmark III, 566 F.3d at 10. In that situation, "targeted discovery" on the issue "whether a structural conflict has morphed into an actual conflict" may be permissible to "shed new light on the motivation behind the plan administrator's decision without expanding the panoply of materials on which that decision was based." Id. However, "any such discovery must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." Id.

In order to be entitled to such discovery the plaintiff must make at least "a threshold showing that the denial of benefits was improperly influenced by the administrator's conflict of interest." McGahey, 2009 WL 799464, at *2. "[T]he mere allegation of structural conflict alone does not mandate automatic discovery." Semedo v. Boston Bldg. Serv. Emps. Trust Fund Long Term Disability Plan, Civil Action No. 12-11697-RWZ, 2013 WL 3805130, at *2 (D. Mass. July 19, 2013) (internal quotation marks omitted), and cases cited. Accord Weinberg v. United of Omaha Life Ins. Co., Civil Action No. 13-11017-NMG, 2014 WL 250339, at *1 (D. Mass. Jan. 21, 2014); Al-Abbas v. Metlife Life Ins. Co. of Am., Civil Action No. 12-11585-FDS, 2013 WL 5947996, at *3 (D. Mass. Nov. 4, 2013). In the instant case, the plaintiff "has made no attempt to bring to the attention of the court any aspect of the record which can fairly be read to reflect any conflict of interest." Beattie v. Prudential Ins. Co. of Am., Civil Action No. 10-30207-KPN, 2011 WL 2413458, at *2 (D. Mass. June 8, 2011). Therefore, he has not established a basis for discovery or enlargement of the record.

Tracia argues that the SSA made its determination to award him benefits based on virtually the same record as Liberty, and there was no material improvement in the plaintiff's condition which would warrant the termination of his LTD benefits. (Pl. Mem. (Docket No. 23) at 3). Consequently, according to the plaintiff, he should be able to explore the reasons behind Liberty's apparently arbitrary termination of benefits. However, "SSA disability determinations generally are not binding on an ERISA analysis, as the two disability proceedings have different regulatory criteria[,]" including the fact that, unlike in ERISA cases, the SSA judges "generally afford greater weight to opinions of treating physicians than non-treating physicians." Dutkewych v. Standard Ins. Co., Civil Action No. 12-11073-DJC, 2014 WL 1334169, at *12 (D. Mass. Mar. 29, 2014). See also Pari-Fasano v. ITT Hartford Life & Acc. Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000) ("The criteria for determining eligibility for Social Security disability benefits are substantively different than the criteria established by many insurance plans. . . . Consequently, although a related Social Security benefits decision might be relevant to an insurer's eligibility determination, it should not be given controlling weight except perhaps in the rare case in which the statutory criteria are identical to the criteria set forth in the insurance plan."). In any event, Tracia is free to argue that the inconsistent outcomes between Liberty's decision and that of the SSA is evidence that Liberty's decision was arbitrary and capricious. See McGahey v. Harvard Univ. Flexible Benefits Plan, 685 F. Supp. 2d 168, 178-79 (D. Mass. 2009). The different decisions, standing alone, however, do not indicate that Liberty's decision was based on bias.

Tracia also cites to the fact that Dr. Brenman's opinions have been rejected in several cases. (See Pl. Mem. at 4-5). As Liberty points out, however, there also are a number of cases where his opinion has been adopted by the court. (See Def. Mem. (Docket No. 24) at 12). Furthermore, the courts that rejected Dr. Brenman's opinions did not do so on the grounds of bias. Plaintiff's "citations to random cases . . . do not establish a pattern of bias on the part of . . . Dr. Brenman from which the Court could conclude that [he was] biased in this case." Carroll v. Hartford Life & Acc. Ins. Co., 937 F. Supp. 2d 247, 273 (D. Conn. 2013) (concluding that the insurer's decision to credit certain doctors' reports, including the report of Dr. Brenman, and the insurer's reliance on outside vendors, including MES, to review applications for benefits, were not arbitrary or capricious).

The plaintiff also challenges various aspects of Liberty's investigation, including the fact that there was no independent medical examination, and that Liberty allegedly failed to consider either the plaintiff's treating physicians' opinions or the SSA decision. Again, however, the merits of the underlying decision are not presently before the court. For present purposes, it is well established that the insurer does not need to conduct a physical examination: "[d]enials of benefits may be based on review of medical records submitted by the claimant." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 526 (1st Cir. 2005). Moreover, there is evidence in the record that indicates that Liberty did consider the SSA award (AR 93) as well as the opinions of the plaintiffs' treating physicians. (See AR 107, 163 (asking if reviewers agreed with treating providers); AR

91-92 (commenting on information from treating physicians)). Tracia has not pointed to anything in the record which makes even a threshold showing that Liberty's decision was based on bias. Contrast Tanner v. Nationwide Mut. Ins. Co., 804 F. Supp. 2d 601, 614 (S.D. Ohio 2011) ("[W]hile a plan administrator need not accord controlling weight to a treating doctor's opinion, the failure to deal with that opinion at all can be one factor in determining that the plan's decision is arbitrary rather than reasoned.").

Finally, the plaintiff has pointed to several cases in which some discovery was allowed. Since the analysis in each case is fact-specific, there is no reason to review them in detail. Suffice it to say, that in each case on which the plaintiff relies, the court recognized that the plaintiff has the burden of making a showing of colorable bias. While that burden may have been met in other cases, it was not met here. See, e.g., Sansby v. Prudential Ins. Co. of Am., Civil Action No. 07-11524-RGS, 2009 WL 799468, at *2 (D. Mass. Mar. 25, 2009) (recognizing that "the court will permit discovery only where a plaintiff makes a satisfactory threshold showing that the administrator's conflict of interest influenced the denial of benefits"); McGahey, 2009 WL 799464, at *3 ("[T]he court will not permit discovery where a plaintiff can point to nothing more than the

existence of a structural conflict of interest.").[2] Plaintiff's allegation of a potential conflict, without support, is insufficient to justify taking discovery in this case.

## **CONCLUSION**

For all the reasons detailed herein, the Plaintiff's Motion to Take Limited Focused Discovery (Docket No. 22) is DENIED.

       / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

---

[2] In <u>Achorn v. Prudential Ins. Co. of Am.</u>, Civil No. 08-125-JAW, 2008 WL 4427159 (D. Me. Sept. 25, 2008), cited by the plaintiff, the court rejected a number of discovery requests, but ordered the disclosure of information related to the defendant's utilization of third party medical consulting firms. In a subsequent decision, <u>Ganem v. Liberty Life Assur. Co. of Boston</u>, Civil No. 12-00128-GZS, 2012 WL 5464604, at *7 (D. Me. Nov. 9, 2012), the same judge apparently reconsidered her decision and denied discovery relating to the medical consultant's relationship, finding that "[t]he idea that routine discovery along the lines outlined in <u>Achorn</u> ... is going to establish in a given case whether a consulting expert evaluated the claim in an unbiased fashion is questionable."